**A. STEMER & E. STOKAR PARTNERSHIP, Intervenor/Appellant,**

v.

**EXCEL DEVELOPMENT I, LLC, Appellee–Plaintiff.**

No. 45A04–0812–CV–724.

Court of Appeals of Indiana.

Dec. 30, 2009.

Timothy J. Maher, David R. Pruitt, Barnes & Thornburg LLP, South Bend, IN, Attorney for Appellant.

James L. Wieser, Wieser & Wyllie, LLP, Schererville, IN, Steven H. Gistenson, Dykema Gossett PLLC, Chicago, IL, Attorney for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Intervenor–Appellant, A. Stemer & E. Stokar Partnership (Stemer & Stokar), a fifty-percent member of Excel Development, LLC (Excel), appeals from the trial court's order of December 4, 2008, in which the trial court ordered, among other things, that partial payments of rents from tenants be immediately allocated and distributed by Excel to Dr. Larry Wolff, the other fifty-percent member of Excel. Stemer & Stokar presents five issues for our review. We need not reach the merits of the issues raised, however, finding the

following issue dispositive: Did Excel have authority to initiate the underlying legal proceedings?

We reverse and remand.

On July 1, 2004, Excel was organized as a limited liability company pursuant to the Indiana Business Flexibility Act for the purpose of operating and managing a multi-tenant medical office building located at 761 45th Avenue, Munster, Indiana. On that date, the members of Excel, Dr. Larry H. Wolff (Dr. Wolff) and Stemer & Stokar, executed and entered into an Operating Agreement governing the operations of Excel. As set forth above, Dr. Wolff and Stemer & Stokar are each fifty-percent members of Excel.

Beginning in August or September of 2008, Robert E. Frank, d/b/a Aria Reconstructive Surgery (Frank) and Munster Medical Same Day Surgery, LLC (Munster Medical) (collectively, the Defaulting Tenants), two of Excel's long-term tenants, fell behind on their rent payments and were able to submit only fifty percent of the payments due under their respective lease agreements.[1] Dr. Wolff and Stemer & Stokar disagreed on how to handle the situation. Dr. Wolff wanted to immediately commence eviction proceedings, and Stemer & Stokar wanted to work with the two otherwise good tenants. Despite the disagreement, on November 3, 2008, Dr. Wolff, on behalf of Excel, filed complaints for eviction against Frank (Cause No. 45D04–0811–PL–105) and Munster Medical (Cause No. 45D04–0811–PL–106).

On November 20, 2008, Stemer & Stokar filed a Motion to Intervene or For Joinder and a Motion for Injunctive Relief and Stay under each cause. On November 24, 2008, the trial court held a hearing originally scheduled to consider the issue of possession of the leased premises in the eviction actions. At that hearing, the court heard argument from Stemer & Stokar as to its motion to intervene in and enjoin the eviction actions, in which Stemer & Stokar argued that Wolff was without authority to bring the action against the Defaulting Tenants in the name of Excel.

Upon hearing the arguments of Dr. Wolff and Stemer & Stokar, the court *sua sponte* suggested a temporary solution to the member dispute, pending mediation thereof. Specifically, the court's plan provided that Frank and Munster Medical would be required to tender fifty percent of their rent payments to Excel. The court's temporary solution further provided that Stemer & Stokar would waive its fifty-percent interest in rent payments received from Frank and Munster Medical and that such monies would be immediately allocated and distributed by Excel to Dr. Wolff. In return, the eviction proceedings would be stayed pending mediation or further order of the court.[2] After further discussion between counsel for the respective parties and the court, Dr. Wolff agreed to the court's suggested temporary solution. Stemer & Stokar disagreed with the court's suggested temporary solution, but agreed to mediate the member dispute as to the authority to file the underlying eviction actions.

Following the hearing, Dr. Wolff, at the direction of the court, submitted a proposed order outlining the court's suggested temporary solution to the member dispute. Stemer & Stokar objected to the proposed order, without explanation, and

---

**1.** The partial rent payments were tendered by the Defaulting Tenants, but the checks were not cashed by Excel.

**2.** Under the terms of the court's temporary solution, Frank and Munster Medical would also be required to pay the common area maintenance fee.

submitted its own proposed order that provided only that the parties agreed to mediate. On December 4, 2008, the trial court entered identical orders, one in the cause relating to Frank and one in the cause relating to Munster Medical, that were substantially similar to the orders proposed by Dr. Wolff. In addition to the temporary solution set forth above, the order provided that the issues presented in the complaint, the order to show cause, and the injunction motion would be submitted to non-binding mediation. On December 12, 2008, Stemer & Stokar filed a notice of appeal under each cause. The causes were consolidated for purposes of appeal.

On appeal, Stemer & Stoker argues that the trial court deprived it of its constitutionally protected property interest without an opportunity to be heard. Stemer & Stokar further argues that the trial court abused its discretion in entering the December 4 order because the order was essentially a preliminary injunction that the trial court entered *sua sponte*, without the requisite evidentiary foundation and without making special findings of fact as required by Ind. Trial Rule 52(A)(1). Stemer & Stokar also argues that the trial court abused its discretion in entering a preliminary injunction that altered the status quo. Dr. Wolff responds that this court lacks jurisdiction over the appeal because the trial court's order was a temporary, equitable solution, not a preliminary injunction. Thus, Dr. Wolff maintains that this is an unnecessary appeal of an unappealable order.

We need not address the issues presented by the parties because we find the answer to the following threshold question dispositive: Does Excel have lawful au-

thority to litigate the eviction actions against the Defaulting Tenants? In other words, the dispute before us is between the equal fifty-percent members of a limited liability company (i.e., Excel) as to the authority of one member to act on behalf of the LLC. Despite this being the threshold issue, the trial court did not make a determination as to the authority of Excel to litigate the action. Rather, the court entered a temporary order [3] pending mediation or subsequent hearing. The parties' arguments regarding the propriety of the court's order avoids the threshold question.

We begin by noting that Stemer & Stokar sought and were granted permission to intervene for the purpose of challenging Excel's authority to bring the eviction actions against the Defaulting Tenants. In support of intervention, Stemer & Stokar argued that Wolff commenced the eviction proceedings without the approval of the majority of the members as required by Section 5.2 of Excel's Operating Agreement. Specifically, Stemer & Stokar, as the other fifty-percent member of Excel, did not want to proceed with eviction proceedings, preferring to work with the Defaulting Tenants. Additionally, Stemer & Stokar maintained that Dr. Wolff's admitted four-percent interest in Munster Medical is "an interest in the outcome of the suit that is adverse to the interest of the limited liability company" and therefore, Dr. Wolff's vote is excluded. *See* Ind.Code Ann. § 23–18–8–1 (West, PREMISE through 2009 1st Regular Sess.). Dr. Wolff responded that Stemer & Stokar's vote was excluded and its approval unnecessary because Alex Stemer and Elliot Stokar, the individual members of Stemer & Stokar, have individual interests in

---

**3.** The court's order essentially operates as a time out and is the functional equivalent of a temporary restraining order.

Frank and Munster Medical that should be imputed to Stemer & Stokar and that those interests are adverse to Excel.[4]

The operations of Excel are governed by its Operating Agreement and by statute. Under Section 5.2 of Excel's Operating Agreement, "the Members shall have the sole and exclusive power to manage and control [Excel's] business, transact any business for [Excel] and to act for or bind [Excel]." Appellant's Appendix at 204. I.C. § 23–18–4–3(a) further provides:

> Unless the articles of organization provide for a manager or managers, and except as otherwise provided in a written operating agreement or this article and subject to subsection (c), the affirmative vote, approval, or consent of a majority in interest of the members is required to decide a matter connected with the business or affairs of the limited liability company.

Excel's Operating Agreement does not provide for a manager or otherwise provide for how to settle a dispute between the equal members. Thus, the consent of a majority in interest of the members was required to decide a matter connected with the business of Excel, including whether to institute the eviction actions against the Defaulting Tenants on behalf of Excel. In this case, the majority in interest of the members includes both members as each member has an equal fifty-percent share in the LLC.

We conclude that the trial court must first resolve the issue of Excel's authority. If the members are at an impasse,[5] then Excel was not authorized to file the underlying eviction actions against the Defaulting Tenants. Thus, the actions would not be properly before the trial court and the trial court should dismiss the actions. If the trial court determines, however, that Excel had the authority to litigate the actions, then the matter can proceed. We therefore reverse the trial court's orders and remand with instructions for the trial court to hold an evidentiary hearing, if necessary, and make a determination as to whether Excel is authorized to litigate the eviction actions pending against the Defaulting Tenants.

Judgment reversed and remanded with instructions.

NAJAM, J., and BRADFORD, J., concur.

---

4. During the hearing, the court swore no witnesses and received no evidence to support the allegations. Dr. Wolff, however, admitted to his interest in Munster Medical.

5. From the record, it seems clear that Stemer & Stokar did not agree with the filing of the eviction actions or authorize Dr. Wolff to act on behalf of Excel.